Jesus I. CHAVEZ, and Rodolfo Silvestre–Lugo, Plaintiffs,

v.

RICELAND FOODS, INC., and Victor Carzoli, Defendants.

No. EP–06–CA–096–DB.

United States District Court, W.D. Texas, El Paso Division.

Feb. 1, 2007.

Douglas L. Stevick, Southern Migrant Legal Services, A Project of Texas RioGrande Legal Aid, Inc., Nashville, TN, for Jesus I. Chavez, Rodolfo Silvestre–Lugo, Plaintiffs.

Spencer F. Robinson, Ramsay, Bridgforth, Harrelson and Starling LLP, Pine Bluff, AR, for Riceland Foods, Inc.

Victor Carzoli, Pro se.

### MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered two opposing Motions for Summary Judgment filed separately in the above-captioned cause on November 15, 2006. One was filed by Plaintiff Jesus I. Chavez and one by Defendant Riceland Foods, Inc. ("Riceland"). On November 27, 2006, Plaintiff filed a Response to Defendant's Motion. On December 4, 2006, Defendant filed a Response to Plaintiff's Motion, to which the Plaintiff filed a Reply on December 16, 2006. The parties jointly filed "Stipulations Of Jesus I. Chavez and Riceland Foods, Inc.,"[1] on November 14, 2006. After due consideration, the Court is of the opinion that Plaintiff's Motion for Sum-

---

**1.** The Parties stipulate that where the Court finds the parties are subject to the AWPA, Defendant will pay Plaintiff $1,500.00 as damages and each party will bear its own costs and attorney's fees.

mary Judgment should be granted and Defendant's Motion for Summary Judgment should be denied for the reasons that follow.

## BACKGROUND

This is an employment case brought against Defendant,[2] under the Migrant and Seasonal Agricultural Worker Protection Act (the "AWPA"), 29 U.S.C. § 1801, *et seq.*[3] 29 U.S.C. § 1801 (West 1999). Plaintiff was recruited by Victor Carzoli, acting as Defendant's agent, to work at Defendant's dryer and storage facility located in McGehee, Arkansas in the summer of 2003. Carzoli operates under the name "Labor Contractors," as an El Paso-based labor recruiter. Carzoli and Defendant entered into an employment contract entitled "Special Agricultural Workers Service Contract" for the purpose of recruiting seasonal workers such as Plaintiff. Plaintiff has his permanent place of residence in El Paso, Texas. Defendant is an Arkansas-based agricultural cooperative association organized under Arkansas law. One of its primary businesses is the receiving, drying, storing, milling and marketing of rice worldwide. Defendant is owned by its farmer members and it is not a farmer, nor does it engage in farming. The farmer-owners deliver their harvested rice, in their own trucks, to the McGehee facility. The facility receives the raw unprocessed rice for cleaning and drying prior to undergoing the milling process conducted at another facility to prepare the rice for human consumption.

The drying and storage process commences as follows. The farmer-owners transport harvested rice to the McGahee facility for drying and storage. The trucks dump the rice onto a platform where the rice is taken through a conveyor belt system. The rice is placed into green storage bins for cleaning. The rice is then placed onto a second conveyor belt system that transports them to another bin for the drying process. The drying process is completed over a period of five to six days. After the rice is finally dried, it is stored in concrete silos for delivery to a second facility for further processing, or it is stored in large metal containers, indefinitely.

Plaintiff's employment responsibilities included general labor duties of mowing grass on the property, sweeping and scooping grain, cleaning empty grain bins, opening and closing truck tailgates during the transportation of harvested rice to the facility,[4] and general plant cleaning and sanitation. The sweeping and scooping up of grain requires that it be returned to the conveyer belt system, the cleaning bin, the drying bin, or the concrete silos and metal containers. Plaintiff does not perform any duties related to actually drying of the rice itself. However, Plaintiff was also responsible for physically entering the concrete and metal containers to remove trash and rice detritus before the drying season began.

Plaintiff began this action on April 4, 2005, claiming that Defendant violated his rights under Title 29 U.S.C. § 1801, *et*

**2.** The Original Complaint named two plaintiffs and two defendants. By Order of the Court dated November 3, 2006, only Plaintiff Chavez and Defendant Riceland remain parties.

**3.** When making a determination under Rule 56, factual questions and inferences are viewed in a light most favorable to the non-movant. *See Calbillo v. Cavender Oldsmobile,*

*Inc.,* 288 F.3d 721, 725 (5th Cir.2002). However, in the instant Motion, the Parties have stipulated to the relevant facts.

**4.** The "tailgate puller" is responsible for opening the tailgate of the truck delivering the harvested rice to the McGehee facility. The tailgate puller sweeps and cleans the platform area to ensure the rice is accurately weighed.

*seq.,* and alleging breach of contract. On November 3, 2006, the Court granted Plaintiff's Motion for Partial Dismissal, wherein, all but six claims under the AWPA were dismissed with prejudice.[5] Plaintiff alleges that he is a migrant agricultural worker protected under the provisions of the AWPA. Defendant states that it is not liable to Plaintiff because it is not subject to the AWPA. The instant Motions followed.

## STANDARD

Summary judgment should be granted only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party that moves for summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, which it believes demonstrate the absence of a genuine issue of material fact. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A material fact is not one that is established conclusively, but rather showing a dispute that requires a fact finder to resolve the truth of the matter. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "More important ... summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248, 106 S.Ct. 2505.

"If the moving party fails to meet this burden, the motion must be denied, regardless of the nonmovant's response."

*Tubacex, Inc. v. M/V Risan,* 45 F.3d 951, 954 (5th Cir.1995). If the movant does meet this burden, however, the nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial. *See, e.g., Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "If the nonmovant fails to meet this burden, then summary judgment is appropriate." *Tubacex,* 45 F.3d at 954. "When the nonmovant fails to make a sufficient showing on an essential element of her case, the moving party is entitled to summary judgment 'since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.'" *McKee,* 877 F.2d at 414–15 (quoting *Celotex,* 477 U.S. at 317, 106 S.Ct. 2548).

When making a determination under Rule 56, factual questions and inferences are viewed in a light most favorable to the nonmovant. *See Calbillo,* 288 F.3d at 725. The party opposing a motion supported by evidence cannot discharge his burden by alleging mere legal conclusions. *See Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505; *see also Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (stating the nonmovant may not successfully oppose summary judgment by merely citing the pleadings). Instead, the party must present affirmative evidence in order to defeat a properly supported motion for summary judgment. *Anderson,* 477 U.S. at 248–49, 106 S.Ct. 2505. The Court considers all the evidence in the record, but makes no determination as to credibility of the evidence. *See id.* at 248, 106 S.Ct. 2505.

## DISCUSSION

The sole issue before the Court is whether Defendant is subject to the

---

5. As stated above, the Order also dismissed named Plaintiff Rodolfo Silvestre–Lugo and Defendant Victor Carzoli.

AWPA. There is no genuine issue of material fact. See, e.g., Celotex, 477 U.S. at 323, 106 S.Ct. 2548. Plaintiff argues that he performed "agricultural employment" prior to actual storage, and thus, this case falls within the scope of the statute. Defendant argues that it is not an "agricultural employer," nor was its employ of Plaintiff classified under "agricultural employment" because Plaintiff performed his work duties after delivery of the rice to the storage facility. Status under the AWPA hinges upon the definitions provided under 29 U.S.C. § 1802. See 29 U.S.C.A. § 1802 (West 1999).[6] The Court agrees with Plaintiff and finds Defendant's argument unconvincing.

■ Courts have broadly construed the AWPA, and its predecessor the Farm Labor Contractor Registration Act ("FLCRA"), to serve its remedial purpose. See Almendarez v. Barrett–Fisher Co., 762 F.2d 1275, 1278 (5th Cir.1985); De La Fuente v. Stokely–Van Camp, Inc., 713 F.2d 225 (7th Cir.1983); Soliz v. Plunkett, 615 F.2d 272, 275 (5th Cir.1980) ("[B]road construction of the Act 'comports with the Act's humanitarian purpose to protect all those hired ... to toil in our nation's fields."); see, e.g., Castillo v. Case Farms of Ohio, Inc., 96 F.Supp.2d 578, 587–88 (W.D.Tex.1999). Through various amendments, Congress has expanded the AWPA and its statutory requirements to apply to a broader range of employers and workers.[7] See 29 U.S.C.A. §§ 1802(1) & (2) &

(3). See generally Almendarez, 762 F.2d at 1280 n. 2; Soliz, 615 F.2d at 276 ("Congress intended that the ... definition[s] include those who engage in one or more of the enumerated activities."); Castillo, 96 F.Supp.2d at 588 n. 10. The spirit of the law remains, as well as certain statutory language. When the AWPA was enacted, it "retained the 1974 amended definition of 'agricultural employment.'" Almendarez, 762 F.2d at 1280 n. 2.

The Fifth Circuit dealt with a situation similar to the instant facts in Almendarez. The Almendarez plaintiffs were packing shed employees whose duties included washing, grading, packing and shipping onions and potatoes. Id. at 1276–77. The Fifth Circuit held that "agricultural employment" included, and the AWPA protected, "all aspects of commerce in agriculture, including ... other processing of agricultural or horticultural products in an unmanufactured state." Id. at 1281–82 (discussing legislative history). In its decision, the Almendarez Court found the Seventh Circuit De La Fuente opinion persuasive, although not directly on point to the facts presented before it. Id. at 1282 (explaining the relevance of "agricultural employment" as it relates to the definition of "migrant workers"). Since the instant case is presented with an almost identical argument that was made to the Seventh Circuit, the Court follows Almendarez's utilization of De La Fuente.

6. The AWPA defines agricultural employment as "employment in any service or activity included within the provisions of section 3(f) of the Fair Labor Standards Act of 1938 (29 U.S.C. 203(f)), or section 3121(g) of Title 26 and the handling, planting, drying, packing, packaging, processing, freezing, or grading prior to delivery for storage of any agricultural or horticultural commodity in its unmanufactured state." 29 U.S.C.A. § 1802(3). An agricultural employer is one who "owns or operates a farm, ranch, processing establishment, cannery, gin, packing shed or nursery,

or who produces or conditions seed, and who either recruits, solicits, hires or employs, furnishes, or transports any migrant or seasonal agricultural worker." 29 U.S.C.A. § 1802(2).

7. "The term 'agricultural association' means any nonprofit or cooperative association of farmers, growers, or ranchers, incorporated or qualified under applicable State law, which recruits, solicits, hires, employs, furnishes, or transports any migrant or seasonal agricultural worker." 29 U.S.C.A. § 1802(1).

In *De La Fuente*, the Seventh Circuit rejected the same argument which Defendants make here, as "overly restrictive." 713 F.2d at 236. The *De La Fuente* defendants argued that the statute "protected only work involving agricultural products prior to their delivery in an unmanufactured state." *Id.* However, the Seventh Circuit disagreed and held that the decisive factor was not the point of delivery, rather the point at which the commodity was actually stored. *Id.*

In other words, once an unprocessed (or 'unmanufactured') agricultural commodity is put in storage pending delivery to market, any processing function which is later performed is not covered by [the AWPA]. Conversely, any 'drying, packing, packaging, processing, freezing or grading' which is performed *before produce is stored* is covered by the Act.

*Id.* at 236 (citing *Guerrero v. Garza*, 418 F.Supp. 182, 187 (W.D.Wis.1976)) (emphasis in original). In *De La Fuente*, the defendants hired certain plaintiffs to work in its cannery located away from the fields. *De La Fuente v. Stokely–Van Camp*, 514 F.Supp. 68, 72 (C.D.Ill.1981) (finding that Defendant's fields were located in Indiana and its canneries were located in Illinois). The Seventh Circuit held that the cannery workers "like their counterparts in the fields, were engaged in 'agricultural employment' covered by the [AWPA]." *De La Fuente*, 713 F.2d at 236. The Court finds *De La Fuente* persuasive to the instant facts.

The instant facts, stipulated by the parties, show that Plaintiff performed his duties prior, during and after the rice drying process. Plaintiff operated the gate that transferred rice to the facility to begin the drying process. Plaintiff scooped any and all rice from the ground and returned it onto the belt-system or into the appropriate bin. Plaintiff then performed clean up work after the rice was placed into the concrete silos or metal tanks for final storage.

■ There is no dispute that Plaintiff performed his work in connection with an agricultural commodity. Therefore, the Court need not analyze whether Plaintiff performed "other processing" of an unmanufactured agricultural commodity. *See, e.g., Almendarez,* 762 F.2d at 1281. Next, both Parties agree that the harvested rice was dried prior to final storage. Likewise, both agree Plaintiff performed his duties prior to the final storage of rice in the concrete silos or metal containers. Therefore, the Court finds that there was no intervening storage of the rice between the time that Plaintiff lifted the gates for initial processing and when he scooped up rice for the drying process. *See De La Fuente,* 713 F.2d at 236. The threshold in the instant case is the physical point at which the harvested rice was placed in either the concrete silos or the metal containers for final storage. All work completed prior to final placement with an agricultural commodity constitutes "agricultural employment." *See Id.* Therefore, the Court is of the opinion that the instant case is subject to the AWPA because Plaintiff was hired by Defendant for "agricultural employment."

### CONCLUSION

The Court is of the opinion that Plaintiff was employed prior, during and after the cleaning and drying process performed at the McGahee facility. Further, the Court determines that Plaintiff performed "other processing of agricultural products" despite not actually drying the rice. Finally, the Court is of the opinion that Plaintiff performed his duties prior to storage of the rice. Thus, the Court finds that Defendant employed Plaintiff in "agricultural employment" as defined under the AWPA. Therefore, the Court finds that the AWPA

is applicable to the instant facts, that Plaintiff's Motion should be granted and Defendant's motion should be denied.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiff Jesus I. Chavez's "Motion For Summary Judgment" is **GRANTED**.

**IT IS FINALLY ORDERED** that Defendant Riceland Foods, Inc.'s "Motion for Summary Judgment" is **DENIED**.